UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
------------------------------X
JOANTHAN BARAM, an individual

Plaintiff,

-against-

JANE DOE, an individual;
    DICELLO LEVITT fka
DICELLO LEVITT GUTZLER, a
Law Firm; THE HABA LAW FIRM,
P.A., a law firm; FARZIN
FRANKLIN AMANAT, ESQ., an
individual; GREG GARRELL
GUTZLER, ESQ., an individual;
and LISA HABA, ESQ. an
individual;

    Defendants.
------------------------------X

Case No.: _____

VERIFIED COMPLAINT AND JURY
DEMAND

    Plaintiff, **JONATHAN BARAM,** through his counsel, **WILLIAMS LLP,**

for his Verified Complaint against DICELLO LEVITT fka DICELLO

LEVITT GUTZLER, THE HABA LAW FIRM, P.A., FARZIN FRANKLIN AMANAT,

ESQ. ("Amanat"), GREG GARRELL GUTZLER, ESQ. ("Gutzler"), and

LISA HABA, ESQ. ("Haba") et al., states:

## NATURE OF SUIT

1.   This suit arises from Jane Doe's attempt to cash in on the

MeToo Movement. In <u>Doe v. Baram</u>, 20 Civ. 9522 (ER) (S.D.N.Y. Nov.

20, 2020), Jane Doe sued Plaintiff, Jonathan Baram ("Mr. Baram"), claiming that in 2007, when she was just 17 years old, Mr. Baram trafficked her to Peter Nygard, a fashion mogul, for Peter Nygard to rape her. Jane Doe did not say what day or month in 2007 Mr. Baram allegedly trafficked her. Jane Doe only claimed that in 2007, Mr. Baram trafficked her. Jane Doe also alleged—again with no dates or specifics—that in 2007, Mr. Baram groped her.

2.    Mr. Baram never trafficked Jane Doe. In fact, Mr. Baram does not know and has never met Jane Doe. When the time came for Jane Doe to supply evidence to support her claims, Jane Doe voluntarily dismissed her suit against Mr. Baram, giving no reason why she had elected to voluntarily dismiss her suit against Mr. Baram.

## PARTIES

3.    Plaintiff, **JONATHAN BARAM,** is an individual and a resident of Florida. Mr. Baram was the primary Defendant in the suit brought by Jane Doe in a matter styled as <u>Doe v. Baram</u>, 20 Civ. 9522 (ER), 2021 WL 4847076 (S.D.N.Y. Nov. 20, 2020).

4.    Defendant, **JANE DOE,** was the Plaintiff in a previous suit she filed against Mr. Baram. Jane Doe's name and address remain unknown. From what little is known about Jane Doe, she lives in Canada and works as an actress in Canada and in the United States.

Service of Process must be had on Jane Doe under the Hague Convention, to which Canada is a signatory.

5.    Defendant, **DICELLO LEVITT FKA DICELLO LEVITT GUTZLER,** is a law firm that claims to have offices in offices in Birmingham, Alabama, in Chicago, Illinois, in New York City, New York, and in Washington, D.C. DiCello Levitt represented Jane Doe throughout her case against Mr. Baram. DiCello Levitt was responsible for gathering evidence to support Jane Doe's claim. DiCello Levitt has a service address at 485 Lexington Avenue Suite 1001 New York, New York 10017.

6.    Defendant, **THE HABA LAW FIRM,** is a Florida Professional Association through which its owner, Lisa Haba, Esq., practices law. The Haba law firm claims it is a law firm that specializes in representing persons who have been trafficked and sexually abused. The Haba Law Firm represents individuals around the U.S., and the Haba law firm has a service address at 1220 Commerce Park Drive, Suite 207 Longwood, Florida 32779.

7.    Defendant, **FARZIN FRANKLIN AMANAT, ESQ.,** is a partner at DiCello Levitt fka DiCello Levitt Gutzler practicing in its New York and Washington DC offices. Amanat is licensed to practice law in New York, and he claims that he regularly practices law in

New York. Amanat has a service address at 485 Lexington Avenue Suite 1001 New York, New York 10017.

8.    Defendant, **GREG GARRELL GUTZLER, ESQ.,** is a partner at DiCello Levitt fka DiCello Levitt Gutzler and claims to practice regularly in New York in the New York office of DiCello Levitt fka DiCello Levitt Gutzler. Gutzler has a service address at 485 Lexington Avenue Suite 1001 New York, New York 10017.

9.    Defendant, **LISA HABA, ESQ.,** is an attorney licensed to practice law in Florida. Ms. Haba is admitted to practice law pro hac vice in New York and practices law in different courts around the country. Ms. Haba has a service address at 1220 Commerce Park Drive, Suite 207 Longwood, Florida 32779.

## JURISDICTION & VENUE

10.   Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because this matter arises under Federal Question as this matter raises several questions under 18 U.S.C. § 1951. This Court also has supplemental jurisdiction over this suit under  28 U.S.C. § 1367. Mr. Baram further invokes this Court's diversity jurisdiction under 18 U.S.C. § 1332: Mr. Baram is domiciled in Florida, this suit is being filed in New York, and Mr. Baram and

Defendants are not both citizens of New York. Further, the amount in controversy far exceeds $75,000.00.

11.  Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Mr. Baram's suit occurred in this judicial district. Venue is further proper in this district because three Defendants live in this district.

<u>**FACTUAL ALLEGATIONS**</u>

**A.   JANE DOE SUED MR. BARAM AND ALLEGED THAT MR. BARAM TRAFFICKED HER TO PETER NYGARD TO BE RAPED.**

12.  On November 20, 2020, Jane Doe sued Jonathan Baram.

13.  Jane Doe's alleged:

13.1. In Paragraph 2 (and in Paragraph 8), Jane Doe claimed that Mr. Baram conspired with Peter Nygard to knowingly and actively recruit young women and underage girls for Peter Nygard, a fashion mogul.

13.2. In Paragraph 9, Jane Doe alleged that Mr. Baram knowingly participated in the conspiracy with Peter Nygard in exchange for influence and clients from Peter Nygard. In the same paragraph, Plaintiff alleged that Mr. Baram got one client, Suelyn Medeiros, from Peter Nygard in exchange for Mr. Baram conspiring with Peter Nygard.

13.3. In Paragraph 11, Jane Doe alleged that flight records show that Mr. Baram flew on Peter Nygard's private plane.

13.4. In paragraph 12, Jane Doe alleged that Mr. Baram was a self—proclaimed pimp.

13.5. In Paragraph 13, Jane Doe alleged she was 17 years old in 2007.

13.6. In Paragraph 14 (and in Paragraph 15), Jane Doe alleged that on an unspecified day in 2007, Mr. Baram brought her to his private apartment in New York City.

13.7. In Paragraph 16, Jane Doe alleged that <u>after</u> she was brought to Mr. Baram's Private apartment, Mr. Baram told her he had a very important friend "in the fashion business," with whom Mr. Baram could set up a meeting. Plaintiff alleged in the same paragraph that Peter Nygard was the special friend Mr. Baram referenced to Jane Doe.

13.8. In Paragraph 17, Jane Doe alleged that Mr. Baram claimed "he needed to send Nygard nude pictures of her for an upcoming bikini photo shoot in the Bahamas.

13.9. In Paragraph 18, Jane Doe alleged that Mr. Baram asked her to take off her clothes and Mr. Baram "took photographs of her, while defrauding her by telling her that these

4156-7759-5461, v. 7

photographs were both necessary and for a legitimate purpose."

13.10. In Paragraph 19, Jane Doe alleged that Mr. Baram sent her nude photos to Peter Nygard, who approved of Jane Doe's nude photos.

13.11. Based on Peter Nygard's alleged approval of Jane Doe's nude pictures, Jane Doe alleged, in Paragraph 20, that Mr. Baram "immediately transported" her "to Peter Nygard's penthouse apartment in New York City, while knowing that [Peter] Nygard intended to rape Jane Doe, a minor."

13.12. Jane Doe alleged in Paragraph 21 that when she and Mr. Baram arrived at Peter Nygard's penthouse apartment, there were several other people present and Mr. Baram and corporate employees of Peter Nygard gave her an alcoholic drink, even though she was a minor.

13.13. In Paragraph 22, Jane Doe uses the passive construction and alleged that she "was taken into a bedroom to 'meet' with Nygard and discuss 'modeling.'"

13.14. In Paragraph 24, Jane Doe says that she lost consciousness while she was talking to Peter Nygard in Peter Nygard's room.

4156-7759-5461, v. 7

13.15. In Paragraphs 25 and 29, Jane Doe alleged that Peter Nygard raped her vaginally and sodomized her.

13.16. After she was raped, Jane Doe alleged in Paragraphs 29 and 30 that she returned to Mr. Baram in the other room where Mr. Baram was waiting and told Mr. Baram she wanted to leave.

13.17. Jane Doe alleged, in Paragraphs 31 and 32 that once she reached Mr. Baram's apartment, she attempted to sleep on Mr. Baram's sofa, but in the middle of the night, Mr. Baram began groping her and she begged Mr. Baram to stop groping her.

13.18. As she was leaving Mr. Baram's apartment, Jane Doe alleged in Paragraph 34 that she saw another "young female" enter Mr. Baram's apartment.

14.   Jane Doe's allegations are lies.

15.   Jane Doe's allegations were made to state a claim under 18 U.S.C. § 1591 ("TVPRA").

16.   Section § 1595 creates a civil action to recover for crimes committed under the TVPRA.

17.   To state a claim under TVPRA, the plaintiff must allege these elements:

17.1. The defendant knowingly recruited, enticed, harbored, provided, maintained the plaintiff; and

17.2. The defendant knew or recklessly disregarded these facts:

    i. force, threats of force, fraud, or coercion would be used to cause the plaintiff to engage in a commercial sex act; or

    ii. the plaintiff was under eighteen years of age and would be caused to engage in a commercial sex act; and

17.3. The offence was in or affecting interstate commerce.

**B.   PLAINTIFF DID NOT (AND SHE COULD NOT HAVE) ALLEGED FACTS TO SUPPORT HER CLAIMS UNDER THE TVPRA.**

18.   Jane Doe did not allege Mr. Baram forced her or threatened to force her to engage in commercial sex acts.

19.   Jane Doe did not allege fraud at all, much less allege fraud with particularity as required by Fed. R. Civ. P. 9(b).

20.   Jane Doe did not allege that Mr. Baram was operating a commercial sex enterprise.

21.   Jane Doe did not allege the <u>specific</u> date in 2007 when she traveled to Mr. Baram's private apartment.

22.   Jane Doe did not allege the <u>approximate</u> date on which she traveled to Mr. Baram's "private apartment."

23.   Jane Doe did not allege how she traveled to Mr. Baram's private apartment.

24.   Jane Doe did not allege how she communicated with Mr. Baram.

25.   Jane Doe did not allege how she met Mr. Baram.

26.   Jane Doe did not allege she exchanged emails with Mr. Baram.

27.   Jane Doe did not allege she exchanged text messages with Mr. Baram.

28.   Jane Doe did not allege that she had telephone conversations with Mr. Baram.

29.   Jane Doe did not allege that she exchanged instant messages with Mr. Baram.

30.   Jane Doe did not allege how (or where) she met Mr. Baram.

31.   Jane Doe did not identify the Corporate employees of Peter Nygard who were present when she claimed Mr. Baram brought her to see Peter Nygard.

32.   Jane Doe did not allege how she and Mr. Baram got to Peter Nygard's house.

33.   Jane Doe did not allege that records exist from her travel from Canada to the United States.

34.   Jane Doe did not allege her point of entry into the United States.

35.   Jane Doe did not <u>describe</u> the private apartment that she claimed belonged to Mr. Baram.

36.   Jane Doe did not allege <u>how</u> she was ultimately transported to Mr. Baram private apartment.

37.   Jane Doe did not allege <u>who</u> paid for her trip from Canada to (and from) New York City.

38.   Jane Doe did not allege <u>how</u> Mr. Baram transported her to Peter Nygard's apartment.[1]

39.   Jane Doe did not allege <u>details</u> about Peter Nygard's apartment.

40.   Jane Doe did not allege the <u>time</u> she arrived at Peter Nygard's apartment.

41.   Jane Doe does not allege who <u>picked</u> her up from the bus station.

---

[1] In another document filed after she filed her Complaint, Jane Doe says that she was transported from Canada to New York City by bus. Jane Doe likely made this allegation believing that being transported by bus would be more difficult to trace than being transported by plane. Jane Doe is wrong. In addition, even assuming, for the sake of argument, that Mr. Baram knew Jane Doe or caused her to come to New York in search of a modeling position, Mr. Baram would not have transported an aspiring model from Canada to New York City by bus. Mr. Baram looks forward to fleshing out all aspects of Plaintiffs' claims.

42.  To put it simply, Jane Doe did not allege specific verifiable instances of any interactions with Mr. Baram that would help advance her claim under the TVPRA.

43.  Jane Doe has never met Mr. Baram.

44.  Mr. Baram has never met Jane Doe.

45.  Mr. Baram has never worked with a model from Canada.

46.  Mr. Baram has never recruited models from Canada.

47.  Mr. Baram would not have worked with an aspiring Canadian model.

48. Mr. Baram did not know any Canadian models.

49.  Mr. Baram catered to aspiring models who were Latina and African-American.

50.  In 2007, the year Jane Doe claims she met Mr. Baram in New York City, Mr. Baram was not in New York City.

51. Although Mr. Baram does not know or otherwise have anything to do with Jane Doe, Jane Doe sued Mr. Baram.

52.  Jane Doe sued Mr. Baram and Peter Nygard.

53.  Mr. Baram never received clients from Peter Nygard.

54.  The models that Mr. Baram represented did not wear the clothes produced by Peter Nygard.

4156-7759-5461, v. 7

55.   Contrary to Paragraph 9 of Jane Doe's Complaint, Peter Nygard did not introduce Suelyn Medeiros to Mr. Baram.

56.   Mr. Baram met Ms. Medeiros years before Mr. Baram met Peter Nygard.

57.   Mr. Baram met Ms. Medeiros when Ms. Medeiros was dating Curtis Jackson, a rapper/actor whose stage name is 50 Cent.

58.   After he met Ms. Medeiros, Mr. Baram booked Ms. Medeiros for videos, television, and on other modeling jobs.

59.   Mr. Baram did not put Ms. Medeiros in contact with Peter Nygard.

60.   Mr. Baram did not know that Ms. Medeiros and Peter Nygard were involved.

61.   Mr. Baram's relationship with Ms. Medeiros was strictly professional, as was Mr. Baram's relationship with other models he represented.

62.   Mr. Baram knew nothing of Ms. Medeiros' personal life.

63.   Mr. Baram has met Peter Nygard twice—both times in the Bahamas.

64.   Mr. Baram first met Peter Nygard at an event in the Bahamas organized by third parties.

65.   Mr. Baram next met Peter Nygard when Mr. Baram traveled to the Bahamas with Maxim Magazine and Black Men Magazine.

66.   Mr. Baram traveled to the Bahamas with nearly 40 people from Maxim Magazine and from Black Men Magazine.

67.   Mr. Baram did not arrange the trips to the Bahamas.

68.   Peter Nygard never invited Mr. Baram to the Bahamas.

69.   Before going to the Bahamas, Mr. Baram had never met Peter Nygard.

70.   While in the Bahamas, Mr. Baram spoke with Peter Nygard as part of a group; and Peter Nygard spoke with Mr. Baram as part of a group.

71.   Mr. Baram has never met Peter Nygard in New York.

72.   Mr. Baram does not know where Peter Nygard lives in New York.

73.   Peter Nygard has never invited Mr. Baram to his apartment in New York.

74.   Peter Nygard has never sent models to Mr. Baram for Mr. Baram to represent.

75.   Mr. Baram has never sent models—young or old—to Peter Nygard to rape.

4156-7759-5461, v. 7

76.  Mr. Baram has never sent models—young or old—to Peter Nygard for Peter Nygard to have a sexual relationship with them.

77.  Mr. Baram has never emailed Peter Nygard.

78.  Mr. Baram has never exchanged text messages with Peter Nygard.

79.  Mr. Baram has never had a phone call with Peter Nygard.

80.  Mr. Baram does not have Peter Nygard's telephone number.

81.  Peter Nygard does not have Mr. Baram's telephone number.

82.  Mr. Baram and Peter Nygard do not have the same friends.

83.  Mr. Baram and Peter Nygard are not part of the same social circle.

84.  Mr. Baram has never received money from Peter Nygard.

85.  Mr. Baram has never received a thing of value from Peter Nygard.

86.  No state or federal prosecution office has ever investigated Mr. Baram for the claims Jane Doe alleged.

87.  No state or federal prosecution office has ever prosecuted Mr. Baram for the claims Jane Doe alleged against Mr. Baram.

88.  Mr. Baram was not (and he could not have been) in New York City in 2007, the year Plaintiff claims Mr. Baram trafficked her.

89.  Mr. Baram did not own an apartment in New York City in 2007.

90.   Mr. Baram did not rent an apartment in New York City in 2007.

91.   Mr. Baram did not use an apartment that belonged to friends or family members in New York City in 2007.

92.   Contrary to Jane Doe's claims, Mr. Baram and Peter Nygard were never in a 7-minute video together.

93.   Despite the overwhelming lack of evidence, Jane Doe and her attorneys, Haba, Gutzler, and Amanat, all conspired to claim that Mr. Baram trafficked Jane Doe and had Jane Doe raped in violation of the TVPRA.

94.   Jane Doe and her attorneys began conspiring about six months before Jane Doe sued Mr. Baram on November 20, 2020.

95.   Jane Doe and her attorneys knew that Jane Doe did not know Mr. Baram.

96.   Jane Doe and her attorneys knew that Jane Doe had never met Mr. Baram in New York City (or elsewhere) in 2007, or at any other time.

97.   Jane Doe and her attorneys knew that Mr. Baram did not work for or conspire with Peter Nygard.

98.   Jane Doe and her attorneys knew that Mr. Baram was not a close associate of Peter Nygard.

99.   Jane Doe and her attorneys had ample access to evidence to corroborate that Mr. Baram did not traffic a human.

100. Yet Jane Doe and her attorneys concocted the allegations that inspire Jane Doe's suit against Mr. Baram because Jane Doe and her attorneys believed Mr. Baram had money.

101. Jane Doe and her attorneys had searched the internet to discover Mr. Baram's financial condition.

102. Jane Doe and her attorneys found information they believed showed that Mr. Baram had substantial assets.

103. Jane Doe and her attorneys believed that when they sued Mr. Baram, they would get substantial sums from Mr. Baram.

104. Jane Doe and her attorneys had a pre-arranged agreement under which they agreed to divide proceeds received from Mr. Baram among themselves.

105. Jane Doe's attorneys would receive 33.3% (or more) of the funds they expected to receive from Mr. Baram.

106. Jane Doe would receive the balance of 66.7% of the sums she expected to recover from Mr. Baram through settlement.

107. Jane Doe did not have resources on her own to finance her suit against Mr. Baram.

108. Jane Doe and her attorneys sought litigation financing from certain entities that failed to vet Jane Doe's claims.

109. The parties or entities financing Jane Doe's litigation knew (or should have known) that Jane Doe did not have a strong claim but financed Jane Doe's suit.

110. Besides litigation financing, Jane Doe sought a contingency arrangement under which, together with the litigation funder, Jane Doe and her attorneys became partners and worked together to fleece Mr. Baram.

111. The contract executed between Jane Doe and her attorneys was an illegal contract, as it had an illegal purpose.

112. Jane Doe never intended to disclose her identity in her suit against Mr. Baram.

113. Jane Doe calculated she would remain anonymous by settling her suit at an early stage, or, if she could not get settlement quickly, she would dismiss her suit against Mr. Baram.

114. Jane Doe's and her attorney's scheme depended on Jane Doe remaining anonymous to keep the lie and their scheme going.

115. Mr. Baram refused to settle with Jane Doe.

116. As a plaintiff in a legal proceeding, Jane Doe would have had to produce evidence to support her claim, had the matter proceeded to discovery.

117. As the case was on the cusp of discovery, Jane Doe inexplicably dismissed her suit against Mr. Baram.

118. Because Mr. Baram represented himself pro se, Jane Doe tried to surreptitiously dismiss her lawsuit.

119. The Clerk of the Court spotted Jane Doe's and her attorney's ruse and rejected Jane Doe's filing.

120. The Court then forced Jane Doe to seek permission from it to withdraw her claims against Mr. Baram.

121. Jane Doe did not say why she dismissed her claims against Mr. Baram.

122. Jane Doe's dismissal stated:

PLEASE TAKE NOTICE that Plaintiff Jane Doe, by and through counsel, and pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), does hereby voluntarily dismiss Defendant JONATHAN BARAM, individually, without prejudice, from the complaint in the above-captioned action. This dismissal is otherwise than upon the merits, and this case is continued against defaulted Defendant WARREN & BARAM MANAGEMENT LLC. Under Rule 41(a)(1)(A)(i) this Notice is self-effectuating and does not require an Order of the Court.

Respectfully submitted,

F. Franklin Amanat
Greg Gutzler
DICELLO LEVITT GUTZLER
One Grand Central Place
60 E. 42nd Street, Suite 2400,
New York, New York 10165
P: (646) 933-1000
E: famanat@dicellolevitt.com

## C.    JANE DOE'S SUIT INJURED MR. BARAM.

123. Jane Doe's conduct and the conduct of Jane Doe's attorney caused Mr. Baram substantial and traumatic harm:

123.1. From the time Plaintiff sued Mr. Baram and to the present, Mr. Baram has not eaten regularly.

123.2. After the filing of her suit and to the present, Mr. Baram has grown despondent—he never believed something like this could have happened to him.

123.3. Mr. Baram's friends and family members kept away from him;

123.4. Some friends and family members still keep their distance from Mr. Baram, even though Jane Doe dismissed her lawsuit.

123.5. Mr. Baram received death threats because of the accusations Jane Doe filed against him.

123.6. The death threats Mr. Baram received came with dismembered body parts.

123.7. Mr. Baram has not had a proper night's sleep since Jane Doe sued him.

123.8. Mr. Baram's sense of self-worth has diminished.

123.9. Mr. Baram has not found work—anywhere.

123.10. Mr. Baram suffers frequent mental breakdowns.

123.11. Mr. Baram is more anxious than he has ever been in his life.

123.12. Without the ability to work and earn a living doing what he loves, Mr. Baram has become depressed.

123.13. Mr. Baram shies away from going out and from attending gatherings for fear that Jane Doe's allegations against him would come up.

4156-7759-5461, v. 7

123.14. Various newspapers and news outlets have published Jane Doe's allegations against Mr. Baram, which has had the effect of compounding Mr. Baram's injuries.

123.15. Since Jane Doe's allegations against him, Mr. Baram has tried to pick up the pieces and move on, but he has found it extremely difficult to move on.

124. Jane Doe and her attorneys knew (or they could foresee) that, given their allegations, Mr. Baram (or any other human) would suffer substantial financial and mental health crises.

125. Jane Doe and her attorneys ignored the risks of their false allegations and proceeded with their claims because their want of money trumped everything that is decent about the practice of law.

126. In fact, Jane Doe's attorneys began advertising themselves as attorneys who fought for women's rights.

127. In fact, Jane Doe's suit against Mr. Baram and the suit against Peter Nygard, Jane Doe's attorneys have no record of supporting women's rights.

4156-7759-5461, v. 7

## FIRST CAUSE OF ACTION: MALICIOUS PROSECUTION
### (AGAINST JANE DOE, DICELLO LEVITT FKA DICELLO LEVITT GUTZLER, THE HABA LAW FIRM, GUTZLER, AMANAT, AND HABA)

128. Mr. Baram incorporates the previous allegations as if they were alleged in this paragraph.

129. Jane Doe and her attorneys began a lawsuit against Mr. Baram in the United States District Court for the Southern District of New York styled as Doe v. Baram, 20 Civ. 9522 (ER) (S.D.N.Y. Nov. 20, 2020)

130. That lawsuit terminated in Mr. Baram's favor in that Jane Doe lacked any evidence to bring her claims in the first instance, and, because of that, Jane Doe elected to voluntarily dismiss her suit.

131. Jane Doe and her attorneys' voluntary dismissal of her suit did not come from compromise or settlement.

132. As alleged above, Jane Doe lacked probable cause to bring her suit against Mr. Baram.

133. Jane Doe and her attorneys brought her suit with actual malice.

134. Jane Doe and her attorneys' suit against Mr. Baram has caused special injury to Mr. Baram.

4156-7759-5461, v. 7

## SECOND CAUSE OF ACTION: ABUSE OF PROCESS

(AGAINST JANE DOE DiCELLO LEVITT, THE HABA LAW FIRM, P.A., GUTZLER, AMANAT, AND HABA)

135. Mr. Baram incorporates the previous allegations as if they were alleged in this paragraph.

136. Jane Doe and her attorneys issued a civil lawsuit against Mr. Baram.

137. When they issued their proceeding, Jane Doe and her attorneys intended to harm Mr. Baram and they lacked excuse and justification for seeking to harm Mr. Baram.

138. Jane Doe and her attorney used the court process in a perverted manner in that Jane Doe and her attorneys lied and claimed, among other heinous acts, that Mr. Baram trafficked Jane Doe to Peter Nygard for Peter Nygard to rape Jane Doe.

139. Jane Doe and her attorney's sole aim was to get money from Mr. Baram.

140. Mr. Baram suffered damages in an amount to be proven at trial.

4156-7759-5461, v. 7

**THIRD CAUSE OF ACTION: VIOLATION OF § 487 OF THE JUDICIARY LAW**
(AGAINST DiCELLO LEVITT, GUTZLER, AMANAT, THE HABA LAW FIRM, AND HABA)

141. Mr. Baram incorporates the previous allegations as if they were alleged in this paragraph.

142. Judiciary Law § 487 regulates the conduct of attorneys licensed to practice in the state of New York, including attorneys admitted in New York pro hac vice.

143. Section 487 provides, in part, that:

> An attorney or counselor who:
>
> 1. ***Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party***;
>
> Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party ***injured treble damages***, to be recovered in a civil action.

144. Jane Doe and her attorneys colluded to deceive this Court and Mr. Baram in bringing a claim against Mr. Baram and making explosive and heinous allegations against Mr. Baram.

145. Jane Doe and her attorneys are liable to Mr. Baram for treble damages.

## FOURTH CAUSE OF ACTION: CIVIL CONSPIRACY
### (AGAINST ALL DEFENDANTS)

146. Mr. Baram incorporates the previous allegations as if they were alleged in this paragraph.

147. Jane Doe knew that Mr. Baram did not cause her to travel to New York City, that Mr. Baram did not grope her, and that Mr. Baram did not cause her to be trafficked to Peter Nygard so that Jane Doe could be raped.

148. Yet in a corrupt agreement between Jane Doe and her attorneys, Jane Doe and her attorneys sued Mr. Baram, knowing that Jane Doe's allegations were false.

149. Jane Doe and her attorneys took overt acts in furthering their corrupt agreement, including, but not limited to, executing their corrupt agreement, filing their claims in court, sustaining their claims in court until they could not, and seeking to get money from Mr. Baram, until they learned that Mr. Baram would give them nothing.

150. Mr. Baram has suffered damages in an amount to be proven at trial.

4156-7759-5461, v. 7

## FIFTH CAUSE OF ACTION: DEFAMATION
(AGAINST ALL DEFENDANTS)

151. Mr. Baram incorporates the previous allegations as if they were alleged in this paragraph.

152. Jane Doe and her attorneys published untrue statements about Mr. Baram.

153. Jane Doe and her attorneys published those allegations to third parties, including every individual who had access to Pacer. Jane Doe and her attorneys also published the same statements on their websites for the world to see.

154. Jane Doe and her attorneys published their lies with malice, comprising:

    154.1.    Ill will;

    154.2.    scienter; or

    154.3.    deliberate falsification.

155. Jane Doe and her attorneys made the lies and falsifications about Mr. Baram's business and his property.

156. Jane Doe and her attorney's falsifications caused others to refrain from dealing with Mr. Baram and deprived Mr. Baram of prospective economic advantage.

157. Mr. Baram has suffered damages in an amount to be proven at trial.

### SIXTH CAUSE OF ACTION: EXTREME AND OUTRAGEOUS CONDUCT
(AGAINST ALL DEFENDANTS)

158. Mr. Baram incorporates the previous allegations as if they were alleged in this paragraph.

159. Jane Doe and her attorneys intended to inflict emotional distress on Mr. Baram, or they should have known that emotional distress would have resulted from their conduct in filing their bogus lawsuit against Mr. Baram and accusing him of, among other things, groping Jane Doe and of trafficking Jane Doe to Peter Nygard so that Peter Nygard could rape Jane Doe.

160. Jane Doe's and her attorney's conduct was outrageous per se because Mr. Baram suffered and continues to suffer extreme emotional distress from receiving death threats, from seeing dismembered bodies sent to him as part of the death threats, from being accused of trafficking another human to be raped, and from being accused of groping a 17-year-old woman.

161. Mr. Baram continues to suffer from depression and other forms of extreme emotional distress.

## SEVENTH CLAIM FOR RELIEF: RESPONDEAT SUPERIOR
(DICELLO LEVITT FKA DICELLO LEVITT GUTZLER AND HABA LAW FIRM, P.A.)

162. Mr. Baram incorporates the previous allegations as if they were alleged in this paragraph.

163. Gutzler, Amanat, and Haba each worked for their respective law firms, and each were acting within the scope of their duties.

164. Gutzler, Amanat, and Haba each intended to benefit themselves and their respective law firms in carrying out the acts and omissions described in this Complaint.

165. Mr. Baram has suffered damages in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF: NEGLIGENCE/NEGLIGENCE PER SE
(JANE DOE, GUTZLER, AMANAT, HABA, DICELLO LEVITT FKA DICELLO GUTZLER, & THE HABA LAW FIRM)

166. Mr. Baram incorporates the previous allegations as if they were alleged in this paragraph.

167. Gutzler, Amanat, Haba as well as the law firms for which they work are subject to Rules 3.1, 3.4(a)-(c), 4.1, 4.3, 4.4(a), 5.1(a)-(d), 5.2, and 8.4(a)-(d) Rules of Professional Conduct and Rule 11 of the Federal Rules of Civil Procedure.

168. The foregoing Rules require Defendants to refrain from bring suit which are not grounded in facts or the law and from bringing

4156-7759-5461, v. 7

suits that are designed to injure parties against whom the suit is brought.

169. Defendants owed Mr. Baram duties which arise from these Rules of Professional Conduct and Rule 11 of the Federal Rules of Civil Procedure.

170. Defendants are therefore liable to Mr. Baram.

171. Mr. Baram has suffered damages that are the proximate cause of Defendants' breach of the Rules of Professional Conduct and Rule 11 of the Federal Rules of Civil Procedure.

## JURY DEMAND

172. Mr. Baram demands a trial by jury on all issues so triable.

**WHEREFORE,** Mr. Baram seeks judgment against Jane Doe, Jane Doe's attorneys, and the law firms at which Jane Doe's attorney's practice. Mr. Baram also seeks damages and attorney's fees and costs, along with pre-and-post judgment interest against all Defendants.

Dated:    New York, New York
          February 28, 2023

4156-7759-5461, v. 7

**RESPECTFULLY SUBMITTED,**

*/s/ T. Edward Williams, Esq.*
T. Edward Williams, Esq.
**WILLIAMS LLP**
45 Rockefeller Plaza 20th FL
New York, New York 10111
(212) 417.0430 (Main)
(212) 417.0431 (Direct)
(212) 417.0433 (Fax)
edward@williamsllp.com

4156-7759-5461, v. 7

## VERIFICATION BY JONATHAN BARAM

I, Jonathan Baram, being of lawful and sound mind, and consistent with 28 U.S.C. § 1746, says that he is the Plaintiff in the above-entitled action, that he has read the foregoing complaint, and that the same is true of his own knowledge.

### SIGNED UNDER PAINS AND PENALTY OF PERJURY

_____
JONATHAN BARAM

Feb 28, 2023
_____
Dated

4156-7759-5461, v. 7