UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN BARAM,

                                    Plaintiff,

                  – *against* –

JANE DOE, DICELLO LEVITT *f/k/a*
DICELLO LEVITT GUTZLER, THE
HABA LAW FIRM P.A., FARZIN
FRANKLIN AMANAT, ESQ., GREG
GARRELL GUTZLER, ESQ., *and* LISA
HABA, ESQ.,

                                    Defendants.

**OPINION & ORDER**

23-cv-1758 (ER)

RAMOS, D.J.:

In a separate action, Jane Doe sued Jonathan Baram for allegedly trafficking her when she was a minor for the purpose of being sexually assaulted by Peter Nygard in 2007 and for assaulting her himself.  *Doe v. Baram*, No. 20-cv-9522 (ER) ("the *Doe* Action"), Doc. 1.  In the instant action, Baram now brings claims against Doe and her attorneys in the *Doe* Action and their firms—DiCello Levitt (*f/k/a* DiCello Levitt Gutzler), the Haba Law Firm P.A., Farzin Franklin Amanat, Gregg Garrell Gutzler, and Lisa Haba (together, "the Attorney Defendants")—for malicious prosecution, abuse of process, violations of § 487 of the Judiciary Law, civil conspiracy, defamation, intentional infliction of emotional distress ("IIED"), respondeat superior, and negligence/negligence per se.  Doc. 1.

Before the Court are Doe and the Attorney Defendants' motions to dismiss the suit in its entirety and seek sanctions against Baram and his counsel, T. Edward Williams and Williams LLP ("the Williams Parties"), jointly and severally.  Docs. 56 and 59.  For the reasons set forth below, the motion to dismiss is granted, and the motion for sanctions is denied.

## I.   BACKGROUND

### A.   The *Doe* Action

In the *Doe* Action, the Attorney Defendants, on Doe's behalf, brought suit on November 12, 2020 against Baram and his company, Warren & Baram Management LLC ("WBM"), pursuant to the United States federal sex trafficking statute, 18 U.S.C. §§ 1591, *et seq.*, and other state laws. *Doe* Action, Doc. 162 (Op. & Order) at 1. Specifically, Doe alleged that WBM had promised to represent her for modeling and acting work; and, based on this promise, Doe traveled from Canada (where she lived) to New York City in 2007. *Id.* at 2. When she arrived in New York City, Baram brought Doe to his private apartment for a business meeting, where he told her that he was friends with Peter Nygard, the fashion designer,[1] and could set up a meeting between Doe and Nygard regarding future modeling work. *Id.* Baram told Doe that, to set up the meeting, he needed to take nude photographs of her to send to Nygard for his approval. *Id.* Baram took nude photographs of Doe and sent them to Nygard. *Id.* After getting approval from Nygard, Baram took Doe to Nygard's apartment, knowing that Nygard intended to rape her. *Id.* At Nygard's apartment, Baram and employees of the Nygard companies offered Doe alcoholic beverages spiked with drugs. *Id.* Nygard then took Doe into a bedroom, ostensibly to discuss modeling. *Id.* Doe became unconscious and was subsequently raped by Nygard. *Id.* Baram then took Doe back to his apartment where he also assaulted her. *Id.* Doe left the next morning. *Id.* At all relevant times, Doe was seventeen years old. *Id.*

Baram, appearing pro se, filed letter motions on March 9, 2021 and March 24, 2021 to dismiss Doe's claims due to the expiration of the statute of limitations. *Doe* Action, Docs. 22, 28. On August 27, 2021, Baram submitted another letter, alleging that

---

[1] Nygard has since been named as a defendant in multiple suits, including criminal indictments in the United States and Canada, related to international sex trafficking, rape, and sexual assault. *Id.* at 1. Nygard was convicted of the charges in Canada. Vjosa Isai, *Peter Nygard, Former Fashion Mogul, Convicted of Sexual Assault*, N.Y. TIMES (Nov. 12, 2023), https://www.nytimes.com/2023/11/12/world/canada/peter-nygard-sexual-assault-verdict.html.

a press release posted on the Attorney Defendants' website,[2] as well as several statements made by Doe's counsel during court proceedings, were defamatory. *Doe* Action, Doc. 56. The Court construed the letter as a motion for leave to file a counterclaim for defamation and to strike portions of the complaint repeated in the press release. *Doe* Action, Doc. 72 at 1.

Although Baram appeared pro se to defend himself, he repeatedly disclaimed any affiliation with WBM and declined to obtain any representation on its behalf, even after the Court's multiple warnings that a corporation must be represented by an attorney to appear in a litigation or be subject to default. *Doe* Action, Doc. 162 at 3–4; *see also Doe* Action, Doc. 23 (Mar. 11, 2021 Order). The Clerk of Court entered a certificate of default against WBM on April 20, 2021 (*Doe* Action, Doc. 35), and the Court entered default judgment against WBM on May 19, 2021 (*Doe* Action, Doc. 44).

On October 15, 2021, the Court denied Baram's motions to dismiss, strike, and for leave to file a counterclaim. *Doe* Action, Doc. 72. As to the motion seeking leave to counterclaim for defamation, the Court held that the pleadings and counsel's statements were protected by the litigation privilege, "and any counterclaim based on the statements would be futile." *Id.* at 8. It also held that the press release accurately restated the allegations in the complaint and fairly reported the pending judicial proceeding, so the press release and its subsequent transmittal to media outlets were also immune from defamation claims. *Id.* at 9. Accordingly, Baram's proposed counterclaim would be futile, and the Court denied leave. *Id.*

On October 22, 2021, Doe voluntarily dismissed her case without prejudice against Baram, continuing her case solely against WBM. *Doe* Action, Doc. 78.

More than eighteen months after the entry of default judgment against it, on January 10, 2023, Williams entered a notice of appearance as counsel for WBM. *Doe*

---

[2] The Attorney Defendants published the press release on November 18, 2020; it is available at *Doe* Action, Doc. 70, pages 2–5.

Action, Doc. 147.  On February 16, 2023, Williams moved to set aside the default judgment against WBM.  *Doe* Action, Doc. 154.  Baram submitted a supporting affidavit in which he alleged that, prior to the default, he in fact *had* attempted to obtain counsel for WBM, but the five attorneys he contacted had declined representation.  *Doe* Action, Doc. 162 at 5.  In the same affidavit, Baram also conceded that he formed WBM and owned it.  *Id.*  The Court denied WBM's motion to set aside the default judgment on July 19, 2023.  *Id.* at 13.  WBM appealed the Court's decision, and the appeal was dismissed for lack of jurisdiction on December 27, 2023.  *Doe v. Warren & Baram Mgmt. LLC*, 23-1192-cv, Doc. 54 (2d Cir. 2023).

### B.  The Instant Action

#### 1.  The Complaint

Baram filed the instant action on February 28, 2023 against Doe and the Attorney Defendants (together, "Defendants").  Doc. 1.  After repeating Doe's allegations in the *Doe* Action, Baram states that they are lies "made to state a claim under 18 U.S.C. § 1591," the Trafficking Victims Protection Reauthorization Act ("TVPRA").  *Id.* ¶¶ 13–15.  Baram further alleges that "Plaintiff [sic] did not (and she could not have) alleged facts to support her claims under the TVPRA" and details several purported deficiencies in Doe's allegations, including:

- Doe did not allege Baram threatened or forced her to engage in commercial sex acts, nor did she allege Baram operated a commercial sex enterprise.

- Doe did not allege fraud, especially not with particularity.

- Doe did not allege that records exist of her travel from Canada to the United States, nor did she specify her point of entry into the United States or who paid for her trip from Canada to the United States.

- Doe did not specify the exact or approximate date in 2007 that she traveled to Baram's apartment, nor did she allege how she traveled there, met Baram, or communicated with him.

- Doe did not identify the Nygard employees who were present when she claimed Baram brought her to see Nygard, nor did she allege how or at what time she and Baram arrived at Nygard's apartment.

- Doe did not describe either Baram's or Nygard's apartment.

*Id.* ¶¶ 18–41.  Accordingly, Baram states that "Jane Doe did not allege specific verifiable instances of any interactions with Mr. Baram that would help advance her claim under the TVPRA."  *Id.* ¶ 42.

To the contrary, Baram alleges that he never met Doe and has never known, worked with, or recruited any models from Canada.  *Id.* ¶¶ 43–48.  Additionally, Baram was not in New York City in 2007, the year Doe claims to have met Baram, nor did he own, rent, or use an apartment in New York City that year.  *Id.* ¶¶ 50, 89–91.  Baram further alleges that he never received clients from Nygard; the models he represented didn't wear clothes Nygard produced; he only met Nygard twice in his life, both at events organized by third parties in the Bahamas; he has never called, texted, or emailed Nygard; and he has never received anything of value from Nygard.  *Id.* ¶¶ 53–85.

Baram further alleges that Defendants were aware that Doe and Baram never met, Baram did not work with Nygard, and Baram was not involved in any trafficking.  *Id.* ¶¶ 95–99.  But, beginning "about six months before Jane Doe sued Mr. Baram on November 20, 2020,"  (*id.* ¶ 94), Defendants conspired to "concoct[] the allegations" in the *Doe* Action because they had "searched the internet to discover Mr. Baram's financial condition" and believed Baram had substantial assets that they could "fleece" and divide amongst themselves (*id.* ¶¶ 100–06, 110).[3]  It was key to the "scheme" to ensure a quick settlement or dismissal of the suit against Baram that Doe remain anonymous throughout the proceedings.  *Id.* ¶¶ 112–14.  Baram also alleges that Defendants sought litigation financing from certain unnamed entities, who also knew or should have known that Doe "did not have a strong claim."  *Id.* ¶¶ 107–09.  Thus, Baram alleges that "[d]espite the overwhelming lack of evidence, Jane Doe and her attorneys, Haba, Gutzler, and Amanat, all conspired to claim that Mr. Baram trafficked Jane Doe and had Jane Doe raped in violation of the TVPRA."  *Id.* ¶ 93.

---

[3] Baram alleges that the Attorney Defendants agreed to represent Doe on a contingency basis, but that agreement "was an illegal contract, as it had an illegal purpose" to "fleece" Baram.  *Id.* ¶¶ 104–06, 110–11.

When Baram refused to settle, Defendants realized that they would be unable to produce any evidence in support of her claim and, seeking to avoid being found out through discovery, "inexplicably" and "surreptitiously" dismissed the suit against Baram. *Id.* ¶¶ 115–18.  Baram further alleges that "[t]he Clerk of the Court spotted Jane Doe's and her attorney's ruse and rejected Jane Doe's filing"; and "[t]he Court then forced Jane Doe to seek permission from it to withdraw her claims against Baram."  *Id.* ¶¶ 119–20.[4]

As a result of the *Doe* Action, Baram alleges he has suffered "substantial and traumatic harm," including that he has not eaten or slept regularly since being sued; has "grown despondent" and anxious and now suffers "frequent mental breakdowns"; lost friends and family members; is afraid to go out in public; received death threats and dismembered body parts; and cannot find work.  *Id.* ¶ 123.

Accordingly, Baram brings claims for malicious prosecution, abuse of process, civil conspiracy, defamation, IIED, and negligence/negligence per se (based on violations of the Rules of Professional Conduct) against all Defendants, as well as a claim for violation of § 487 of the Judiciary Law against the Attorney Defendants and a claim for respondeat superior against DiCello Levitt and the Haba Law Firm.  Doc. 1.

### 2.  *Procedural History*

On March 1, 2023, Baram, seeking emergency relief, requested a hearing to show cause why the Court should not order Defendants to disclose Doe's identity.  Doc. 4. Following a hearing on March 7, 2023, the Court denied the application.  Doc. 15.

Doe and the Attorney Defendants sought leave to move to dismiss Baram's suit on May 19 and June 21, 2023, respectively (Docs. 35, 52), which the Court granted (June 8, 2023 Minute Entry; Doc. 53).  On June 30, 2023, Baram sought leave to file a motion to disqualify DiCello Levitt and its attorneys from representing Doe in the instant action.

---

[4] No entries on the docket in the *Doe* Action reflect that the Clerk of Court ever rejected Doe's notice of voluntary dismissal, nor that the Court required Doe to obtain leave to voluntarily dismiss.  *See Doe* Action, Docs. 76, 78.  Baram also does not specify any particular docket entries or allege that the Clerk and Court acted off-the-record.  *See* Doc. 1, ¶¶ 19–20.

Doc. 54.  On July 12, 2023, the Attorney Defendants filed the instant motions for sanctions against Baram and the Williams Parties (Doc. 56) and to dismiss (Doc. 59). Doe also filed a notice of motion to dismiss.  Doc. 61.  The next day, the Attorney Defendants also filed a letter motion in opposition to Baram's letter motion for disqualification in which they sought leave to move under 28 U.S.C. § 1927 for an award against the Williams Parties to satisfy the excess costs, expenses, and attorneys' fees incurred defending against the purportedly frivolous disqualification motion.  Doc. 63. At a pre-motion conference on July 20, 2023, the Court denied Baram leave to move to disqualify and also denied the Attorney Defendants leave to move for costs and fees.  July 20, 2023 Minute Entry.  The motions for sanctions and dismissal were fully briefed on October 3, 2023.

## II.    LEGAL STANDARDS

### A.  Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 556).  However, this "flexible plausibility standard" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (internal quotation marks and citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Sikhs*

*for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)).  Indeed, "the purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it."  *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citation omitted).  Thus, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

In considering a Rule 12(b)(6) motion, a district court may also consider "documents attached to the complaint as exhibits[] and documents incorporated by reference in the complaint."  *Doe v. N.Y. Univ.*, No. 20-cv-1343 (GHW), 2021 WL 1226384, at *10 (S.D.N.Y. Mar. 31, 2021) (quoting *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)).  Additionally, "a court is permitted to take judicial notice of public records, which includes complaints and other documents filed in federal court."  *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 321 (S.D.N.Y. 2015); *see also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts . . . not for the truth of the matter asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

### B.  Rule 11 Sanctions

Federal Rule of Civil Procedure 11 authorizes the Court to impose sanctions when a party files or advocates for a pleading that is improper, warrantless, frivolous, or otherwise unsupported by available facts.  Fed. R. Civ. P. 11(b)–(c); *see also Robledo v. Bond No. 9*, 965 F. Supp. 2d 470, 477–78 (S.D.N.Y. 2013) ("A pleading, motion or other paper violates Rule 11 either when it has been interposed for any improper purpose, or

where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or good faith argument for the extension, modification or reversal of existing law." (citation omitted). Importantly, Rule 11 imposes a duty upon counsel to conduct a reasonable inquiry into the validity and viability of their pleadings.  Fed. R. Civ. P. 11(b) (noting that "[b]y presenting to the court a pleading, . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that the pleading is valid and properly brought before the Court); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990) (emphasizing that Rule 11 directs counsel to "stop, think and investigate . . . carefully before serving and filing papers" (citation omitted)).  "Absent exceptionable circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." Fed. R. Civ. P. 11(c)(1).

When deciding whether Rule 11 has been violated, the Court applies an objective standard of reasonableness, *W.K. Webster & Co. v. Am. President Lines, Ltd.*, 32 F.3d 665, 670 (2d Cir. 1994), and looks to, among other factors, whether the party acted in bad faith; whether they relied on a direct falsehood; and whether the claim was "utterly lacking in support," *see New V & J Produce Corp. v. NYC Caterers Inc.*, No. 13-cv-4861 (ER), 2014 WL 5026157, at *7 (S.D.N.Y. Sept. 29, 2014).

A finding that Rule 11 has been violated does not compel the imposition of sanctions, however.  *See Bernhardt v. Tradition N. Am.*, 676 F. Supp. 2d 301, 306 (S.D.N.Y. 2009) (stating that a motion for sanctions under Rule 11 raises two issues: (1) whether Rule 11 has been violated, and (2) whether the court should exercise its discretion to award sanctions based on the violation).  Rule 11(c) provides only that the Court "may" impose appropriate sanctions on attorneys, law firms, or parties that violate the rule.  Fed. R. Civ. P. 11(c)(1); *see also Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) ("[S]anctions under Rule 11 are discretionary, not

mandatory."); *Chauvet v. Local 1199, Drug, Hosp. & Health Care Emps. Union*, Nos. 96-cv-2934 (SS) & 96-cv-4622 (SS), 1996 WL 665610, at *17 (S.D.N.Y. Nov. 18, 1996) (holding that it is left to the Court's discretion whether to impose sanctions for a Rule 11 violation, "even where the violation is clear").

Moreover, Rule 11 sanctions "should be imposed with caution." *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir. 1994). Rule 11 sanctions "are an extreme remedy, such that [w]hen divining the point at which an argument turns from merely losing to losing and sanctionable . . . district courts [must] resolve all doubts in favor of the signer [of the pleading]." *Ramashwar v. Espinoza*, No. 05-cv-2021 (AJP), 2006 WL 36752, at *3 (S.D.N.Y. Jan. 6, 2006) (internal quotation marks and citation omitted); *accord Fleming v. Hymes-Esposito*, No. 12-cv-1154 (JPO), 2013 WL 1285431, at *11 (S.D.N.Y. Mar. 29, 2013) ("Rule 11 sanctions are an extreme measure."). Accordingly,"[t]he standard for imposing Rule 11 sanctions . . . is purposefully high, so as not to stifle legal creativity and zealous advocacy." *City of Perry, Iowa v. Procter & Gamble Co.*, No. 15-cv-8051 (JMF), 2017 WL 2656250, at *2 (S.D.N.Y. June 20, 2017). The Second Circuit has noted that "Rule 11 targets situations where it is patently clear that a claim has absolutely no chance of success." *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 626 (2d Cir. 1991) (internal quotation marks and citations omitted); *see also In re Highgate Equities, Ltd.*, 279 F.3d 148, 154 (2d Cir. 2002) (holding that "under Rule 11(b)(3), 'sanctions may not be obtained unless a particular allegation is utterly lacking in support'" (citation omitted)). Even more, courts generally look for a "direct falsehood" in a party's papers and contentions. *Sichel v. Unum Provident Corp.*, 230 F. Supp. 2d 325, 332 (S.D.N.Y. 2002) (citation omitted). A "reasonable belief that a colorable claim" existed at the time of the complaint (or before discovery) allows parties and counsel to avoid sanctions regardless of the claim's success. *Rotter v. Leahy*, 93 F. Supp. 2d 487, 503 (2d Cir. 2000). Indeed, finding later that a claim lacked evidentiary support is "not a sufficient basis on which to impose sanctions." *Id.*; *but see Carlton Grp., Ltd. v. Tobin*, No. 02-cv-5065 (SAS), 2003

WL 21782650, at *6 (S.D.N.Y. July 31, 2003) ("Rule 11 sanctions are appropriate where an attorney or party declines to withdraw a claim upon an express request by his or her adversary after learning that [the claim] was groundless." (internal quotation marks and citation omitted)); *Levy v. Aaron Faber, Inc.*, 148 F.R.D. 114, 122–23 (S.D.N.Y. 1993) (imposing Rule 11 sanctions where, "had plaintiff's counsel conducted a reasonable inquiry into the law before filing the amended complaint, he would have had ample reason to conclude that many of plaintiff's claims . . . were barred by the relevant statutes of limitations").

If the Court determines that imposition of Rule 11 sanctions is appropriate, they "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). "The sanction may include . . . an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.*

## III.   DISCUSSION

### A.  Motion to Dismiss is Granted

Defendants[5] move to dismiss Baram's suit in its entirety on the grounds that (1) collateral estoppel and the statute of limitations bar some or all of the claims; (2) Baram fails to state any claim upon which relief can be granted; and (3) Baram's actions are procedurally improper under the first-to-file rule, the prior pending action doctrine, and the *Noerr-Pennington* Doctrine.  Doc. 60.  The Court considers first the procedural propriety of the action before turning, second, to the statute of limitations and, third, to whether Baram properly stated a claim.

---

[5] Although the motion is made by the Attorney Defendants, Doe states that "[a]ll of the arguments of the Attorney Defendants apply equally to, and are equally available to," her; and she therefore "joins in the request for relief sought" and "fully adopts as her own and incorporates by reference" the Attorney Defendants' arguments and authority.  Doc. 62 at 2.

*1.  Baram's Action is Not Procedurally Improper*

Defendants argue that the first-to-file rule, prior pending action doctrine, and *Noerr-Pennington* Doctrine render Baram's action procedurally improper.  *Id.* at 34–36.

The first-to-file rule provides that, where there are "two competing lawsuits involving substantially the same issue," a rebuttable exemption exists that "the first suit should have priority" for purposes of determining "whether a cause of action needs to be adjudicated as a compulsory counterclaim," *Internet Law Library, Inc. v. Southridge Capital Mgmt. LLC*, 208 F.R.D. 59, 64 (S.D.N.Y. 2002) (citation omitted), and to determine the proper venue, *Sunwealth Glob. HK Ltd. v. Pinder Int'l, Inc.*, No. 20-cv-1436 (ER), 2021 U.S. Dist. LEXIS 54765, at *14 (S.D.N.Y. Mar. 23, 2021).  The rule sounds in judicial comity and "embodies considerations of judicial administration and conservation of resources."  *Fit & Fun Playscapes, LLC v. Sensory Path, Inc.*, No. 19-cv-11697 (NSR), 2022 U.S. Dist. LEXIS 6606, at *9 (S.D.N.Y. Jan. 12, 2022) (quoting *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989)).  Thus, it applies only where two actions "involving the same parties and issues are *pending simultaneously* in *different* federal courts."  *Sotheby's, Inc. v. Minor,* No. 08-cv- 7694 (BSJ), 2009 WL 73134, at *1 (S.D.N.Y. Jan. 6, 2009) (emphasis added).  Here, only the instant action remains pending between Doe and Baram, as Doe already voluntarily dismissed the *Doe* Action as against Baram.  *See Doe* Action, Doc. 78.  Even if the Court were to consider the *Doe* Action as still "pending," however, it is not pending in a *different* federal court; indeed, both actions are before the same judge in the same district.  In other words, there is no question of venue to decide, *see Sunwealth Glob. HK Ltd.*, 2021 U.S. Dist. LEXIS 54765, at *14; and, even if the Court could demand that Baram bring the instant claims as counterclaims in the *Doe* Action despite having been terminated as a party therein, it would conserve no judicial resources to so order, *see Fit & Fun Playscapes, LLC*, 2022 U.S. Dist. LEXIS 6606, at *9.  Accordingly, the first-to-file rule does not apply.  *See Sotheby's, Inc.*, 2009 WL 73134, at *1.

The prior pending action doctrine prevents plaintiffs from proceeding in federal court with a second lawsuit duplicative of an earlier pending action involving "the same rights asserted and the same relief prayed for," which is "founded upon the same facts." *Briarpatch Ltd., L.P. v. Thomas*, 265 F. Supp. 2d 219, 225 (S.D.N.Y. 2003) (citations omitted). Like the first-to-file rule, the doctrine sounds in comity and conservation of judicial resources by allowing a court to stay or dismiss an action raising issues already being considered in a previously filed and still-pending action. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000). Thus, as the name suggests, the prior pending action doctrine applies where there are *two* pending suits. *See id.; Briarpatch*, 265 F. Supp. 2d at 225. Here, as noted above, there are not two currently pending actions against Baram; he is a party only in the instant litigation. *See Doe* Action, Doc. 78. While the *Doe* Action may therefore have preclusive effect on the instant action, *see Curtis*, 226 F.3d at 138–39, the prior pending action doctrine is inapposite.

Finally, the *Noerr-Pennington* Doctrine protects parties from liability for "efforts to influence governmental action through litigation[,] lobbying," and all other "petitioning activity." *Singh v. NYCTL 2009-A Tr.*, 683 F. App'x 76, 77 (2d Cir. 2017). Although it was developed to immunize lobbying of governmental entities from Sherman Act antitrust liability, because *Noerr-Pennington* is rooted in the application of First Amendment principles, it has been expanded to cover liability based on many tort theories. *See Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568, 594–95 (S.D.N.Y. 2010) (collecting cases). Thus, it now "generally immunizes from liability a party's commencement of a prior court proceeding." *T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*, 312 F.3d 90, 93 (2d Cir. 2002) (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)). Crucially, however, "sham litigation" is not immunized. The "sham exception" applies where the litigation is (1) "objectively baseless" and (2) subjectively "intended to cause harm to the defendant 'through the use [of] governmental process—as opposed to the outcome of that process.'" *Michelo v.*

13

*Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 693 (S.D.N.Y. 2019) (alteration in original) (citation omitted).  Litigation is objectively baseless only where "no reasonable litigant could realistically expect success on the merits."  *Singh*, 683 F. App'x at 78 (quoting *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60 (1993)).  Because the *Noerr-Pennington* Doctrine is an affirmative defense, however, the plaintiff bears no burden to plead facts to show that the sham exception applies, and dismissal is only warranted at the pleading stage "if it is clear from the face of the complaint, and matters of which the [C]ourt may take judicial notice, that the plaintiff's claims are barred as a matter of law."  *360 Mortg. Grp., LLC v. Fortress Inv. Grp. LLC*, No. 19-cv-8760 (LGS), 2020 U.S. Dist. LEXIS 161531, at *10 (S.D.N.Y. Sep. 3, 2020) (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)).  Here, Baram seeks to invoke the sham exception on the basis that the *Doe* Action was brought solely "to extort him."  Doc. 66 at 12 ("Once Jane Doe learned Baram had no money, she dismissed her claims, proving conclusively that she was never looking for justice.").  Defendants vigorously dispute that the *Doe* Action was a sham.  Doc. 70 at 12–13.  But, because *Noerr-Pennington* is an affirmative defense, the Court ultimately need not decide the issue now.

Thus, none of Defendants' arguments for dismissal based on procedural propriety are availing.

2. *The Defamation, Malicious Prosecution, Abuse of Process, and IIED Claims Are Untimely*

Defendants argue that all Baram's claims for defamation, malicious prosecution, abuse of process, and IIED are all governed by a one-year statute of limitations that ran in October 2022 at the latest, but Baram did not file the instant action until February 28, 2023, rendering those claims time-barred.  Doc. 60 at 20–21.  Specifically, Defendants contend that the defamation claim accrued on the date of the first publication, meaning the one-year statute of limitations period began running on November 12, 2020 when the

*Doe* Action was filed, or November 18, 2020 when the Attorney Defendants issued their press release.  *Id.*  Similarly, the malicious prosecution, abuse of process, and IIED claims accrued upon the end of the conduct directed at Baram, meaning the one-year statute of limitations began running on October 22, 2021 when Doe voluntarily dismissed her claims against Baram.  *Id.*

Baram first argues that the timing issues do not appear on the face of his complaint and therefore may not be decided by a 12(b)(6) motion to dismiss, as opposed to a Rule 12(c) motion.  Doc. 66 at 13.  In any event, Baram argues that the continuing tort doctrine extends the one-year limitations period to the date of the last tortious conduct where there is a continuing pattern of actionable behavior.  *Id.* at 14.  And, although Baram is dismissed from the *Doe* Action, Defendants continue to pursue WBM, whose liability is "derivative" to Baram's, meaning that Defendants are still actively pursuing Baram, and the continuing tort doctrine thus renders the malicious prosecution, IIED, and abuse of process claims timely.  *Id.*  Moreover, the one-year statute of limitations for defamation may be extended by the continuing tort doctrine, equitable tolling based on Baram's poor mental health following the *Doe* Action, republication of defamatory statements, and former-Governor Andrew Cuomo's emergency orders in response to the COVID-19 pandemic.  *Id.* at 15–16.  Baram also notes that abuse of process claims accrue upon discovery.  *Id.* at 14.

Defendants reply that any tolling based on COVID-19 expired on November 4, 2020, before the *Doe* Action was filed and therefore necessarily before the earliest accrual date of any of Baram's causes of action.  Doc. 70 at 10–11.  Baram has also not shown that his mental health concerns rose to the level of insanity, as required for equitable tolling.  *Id.* at 11.  Moreover, the continuing tort doctrine does not apply to defamation, abuse or process, or malicious prosecution claims, and Baram cited no cases in support of his position to the contrary.  *Id.* at 11–12.

First, Baram is wrong that the Court may not decide a statute of limitations defense on a 12(b)(6) motion.[6]  For one, the timing issues *do* appear on the face of Baram's complaint (although he misstates that the *Doe* Action was filed on November 20, 2020).  *See, e.g.*, Doc. 1 ¶ 12.  And although some relevant dates (*e.g.*, the dismissal of the *Doe* Action as against him or the issuance of the press release) are omitted from the complaint, the underlying documents are either incorporated by reference or sufficiently integral to the complaint that the Court may nonetheless consider them.  *See DiFolco*, 622 F.3d at 111.  And, even if the complaint had made no mention of the relevant dates and documents, courts may nonetheless take judicial notice of court filings to establish the fact of such filings and litigation, even if not for the truth of the matter asserted therein.  *Kramer*, 937 F.2d at 774; *Medcalf*, 84 F. Supp. 3d at 321.  Accordingly, Defendants' statutes of limitations arguments are properly before the Court.

Second, the parties do not dispute that all four claims are governed by a one-year statute of limitations, that a defamation claim accrues at the time of publication, and that malicious prosecution and IIED claims accrue upon the end of conduct directed at Baram (*i.e.*, when he was dismissed from the suit).  *Compare* Doc. 60 at 20–21, *and* Doc. 70 at 9–12, *with* Doc. 66 at 13–16.  And while Baram asserts that his abuse of process claim accrued upon discovery, instead of at dismissal (Doc. 66 at 14), that would only begin the one-year period sooner.  Accordingly, the one-year limitations period for all four claims ran, at the latest, on October 22, 2022, one year after Baram was dismissed from the *Doe* Action, and his claims here are untimely as filed on February 28, 2023 unless a tolling doctrine applies.

---

[6] Additionally, Baram's argument that Defendants must wait to raise the timeliness arguments until they may make a Rule 12(c) motion is mistaken because a Court is governed on a 12(c) motion by the same rules as on a 12(b)(6) motion, including with respect to what documents it may rely upon to decide the motion.  *See Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020); *Lombardo v. Dr. Seuss Enter., L.P.*, 279 F. Supp. 3d 497, 505 (S.D.N.Y. 2017).

However, Baram has not established that any tolling doctrine applies.  First, any executive orders providing for tolling due to COVID expired as of November 4, 2020, *Brash v. Richards*, 149 N.Y.S.3d 560, 562–63 (N.Y. App. Div. 2d Dep't 2021), before the *Doe* Action was filed, and are therefore irrelevant.  Second, Baram cites no authority whatsoever for the proposition that equitable tolling applies based on the "struggles he has undergone since Jane Doe sued him."  Doc. 66 at 15.  Moreover, "mental illness is on its own insufficient for equitable tolling purposes." *Gardner v. Wansart*, No. 05-cv-3351 (SHS), 2006 U.S. Dist. LEXIS 69491, at *14 n.4 (S.D.N.Y. Sep. 25, 2006).  Rather, equitable tolling is appropriate only where the plaintiff is "insane at the time the cause of action accrues and is 'unable to protect [his] legal rights because of an overall inability to function in society.'" *Id.* (citations omitted).  Accordingly, where a plaintiff "does not allege that his mental illness rose to the level of insanity nor that any such illness impeded his ability to function in society[, t]he complaint is insufficient on its face to merit equitable tolling." *Id.*  Baram has not attempted to meet this standard.  Third, Baram cites no authority for his assertion that republication of defamatory statements extends the statute of limitations, nor does he specify what constituted republication or when such republication occurred.  Doc. 66 at 15.  Accordingly, the Court cannot find that the statute of limitations for Baram's defamation claim was tolled.  Finally, Baram's continuing tort theory of tolling is predicated on the assumption that WBM's liability in the *Doe* Action is derivative of Baram's, and Plaintiffs therefore continue "to defame, maliciously prosecute, and abuse process as to Baram because they must continue the sham allegations against Baram to get to [WBM.]"  Doc. 66 at 14.  But Baram has repeatedly and consistently disclaimed any association with WBM, including at hearings, in letters to the Court, and in an affidavit under penalty of perjury.  *See Doe* Action, Doc. 162 at 2–5 (collecting instances).  Based on those representations, the Court will not now find that WBM and Baram are subject to derivative liability for purposes of tolling the

applicable statutes of limitations.  Therefore, Baram's defamation, malicious prosecution, abuse of process, and IIED claims are all dismissed as untimely.

### 3.  Failure to State a Claim

The Court now turns to the remaining claims for violations of § 487 of the Judiciary Law, civil conspiracy, respondeat superior, and negligence, all of which Defendants seek to dismiss for failure to state a claim.

#### a.  The Judiciary Law § 487 Claim is Dismissed

New York Judiciary Law § 487 makes it a misdemeanor for an attorney to participate in "any deceit or collusion," or consent to the same, "with intent to deceive the court or any party," and provides that a party injured by such deceit or collusion may recover treble damages in a civil action.  "The statute does not encompass the filing of a pleading or brief containing nonmeritorious legal arguments," nor pre-suit conduct to bring an unnecessary action.  *Bill Birds, Inc. v. Stein Law Firm, P.C.*, 149 N.E.3d 888, 891–92 (N.Y. 2020).  Moreover, "an '[a]ssertion of unfounded allegations in a pleading, even if made for improper purposes, does not provide a basis for liability' under Section 487."  *Tacopina v. Kerik*, No. 14-cv-749 (LTS), 2016 WL 1268268, at *6 (S.D.N.Y. Mar. 31, 2016) (alteration in original) (citation omitted).  Thus, a plaintiff cannot state a claim by making "conclusory assertions that the allegations contained in the[] complaint[] are false," and this remains true *even* if the plaintiff could assert facts demonstrating the claims against him were "unfounded."  *Id.*

Baram bases his § 487 claim on his allegations that the Attorney Defendants knew Doe never had any evidence to substantiate her claims, as demonstrated by their failure to plead more specific facts in the *Doe* Action and voluntarily dismissal of the suit when she learned that Baram had no money.  Doc. 66 at 20–21.  Because filing an action, raising non-meritorious arguments, and pleading unfounded or false allegations are not bases for § 487 liability even when made for improper purpose, Baram cannot state a claim.  *See Tacopina*, 2016 WL 1268268, at *6; *Bill Birds, Inc.*, 149 N.E.3d 891–92.

### b.   *The Negligence Claim is Dismissed*

Baram bases his negligence claim against all Defendants on the Attorney Defendants' purported violation of Rules 3, 4, 5, and 8 of the Rules of Professional Conduct[7] and Federal Rule of Civil Procedure 11, which he alleges constitute duties owed to him.  Doc. 1 ¶¶ 166–71.  Defendants move to dismiss the claim on the basis that attorneys owe no duty to their adversaries, and the absence of a duty is fatal to the negligence claim.  Doc. 60 at 32 (citations omitted).  Baram responds that "New York state and federal courts routinely sanction litigants and their attorneys for bringing frivolous and groundless claims."  Doc. 66 at 26.  Moreover, Rule 3.4 "specifically set[]s out an attorney's duty to third parties," so Defendants err in arguing that they owe Baram no duty of care because they did not represent him.  *Id.*

First, Baram has stated no duty that Doe, as opposed to her attorneys, owed him.  *See* Doc. 1 ¶¶ 166–71; Doc. 66 at 26.  Accordingly, Baram's claim is dismissed as against Doe.  Second, Baram points to no case in which a negligence claim lay against an attorney on the basis of purported violation of the Rules of Professional Conduct or Federal Rules of Civil Procedure, nor in which a court held that those rules constitute duties owed to adversaries or third parties.  To the contrary, courts regularly hold that "violations of the Rules of Professional Conduct do not create a private cause of action," meaning even that violations of those rules cannot be a basis for *clients* to sue their attorneys for negligence.  *See Long v. De Feis O'Connell & Rose, P.C.*, No. 20-cv-2530 (AT), 2021 U.S. Dist. LEXIS 14341, at *13–14 (S.D.N.Y. Jan. 26, 2021); *see also* Doc. 70 at 15–16 (collecting cases).  In the absence of any authority indicating that either the

---

[7] Specifically, Baram alleges violations of Rules 3.1 (meritorious claims and contentions), 3.4(a)–(c) (fairness to opposing party and counsel), 4.1 (truthfulness in statements to others), 4.3 (dealing with unrepresented persons), 4.4(a) (respect for rights of third persons), 5.1(a)–(d) (responsibilities of a partner or supervisory lawyer), 5.2 (responsibilities of a subordinate lawyer), and 8.4(a)–(d) (misconduct).  Doc. 1 ¶ 167; *Model Rules of Professional Conduct*, ABA (last visited January 22, 2024), https://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional _conduct/model_rules_of_professional_conduct_table_of_contents/.

rules of Professional Conduct or the Federal Rules of Civil Procedure establish duties that attorneys owe to their adversaries, Baram may not assert a negligence claim.

### c.   Neither Respondeat Superior Nor Civil Conspiracy are Standalone Causes of Action

"Respondeat superior is not an independent cause of action, but a theory of liability that must attach to an underlying claim."  *Spence v. City of N.Y.*, No. 20-cv-10090 (LTS), 2022 U.S. Dist. LEXIS 176450, at *7 (S.D.N.Y. Sep. 28, 2022) (citation omitted).  Likewise, "New York does not recognize civil conspiracy to commit a tort as an independent cause of action, and a cause of action alleging conspiracy to commit a tort stands or falls with the underlying tort."  *Brainbuilders LLC v. EmblemHealth, Inc.*, No. 21-cv-4627 (KPF), 2022 U.S. Dist. LEXIS 140874, at *28 (S.D.N.Y. Aug. 8, 2022) (citation omitted), *aff'd sub nom. Sorotzkin v. Emblemhealth Inc.*, No. 22-3194, 2023 U.S. App. LEXIS 28724 (2d Cir. Oct. 30, 2023).

Because the Court has dismissed the remainder of Baram's claims, those for respondeat superior and civil conspiracy must also be dismissed because they cannot stand alone without an underlying viable tort.  *See id.*; *Spence*, 2022 U.S. Dist. LEXIS 176450, at *7.

### 4.   Baram is Denied Leave to Amend

In the alternative, Baram seeks leave to amend.  Doc. 66 at 26–27.  Pursuant to Rule 15, the Court "should freely give leave" to amend a pleading "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  It is "within the sound discretion of the [trial] court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007); *see also Gayle v. Larko*, No. 18-cv-3773 (ER), 2019 WL 4450551, at *4 (S.D.N.Y. Sept. 17, 2019).  Importantly, leave is unwarranted where "the problem with [the] claims is 'substantive' and, thus, 'better pleading will not cure it.'"  *Gayle*, 2019 WL 4450551, at * 4 (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).  In other words, leave to amend may be denied where it would be futile.  *Ruffolo v. Oppenheimer*

& Co., 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend." (citations omitted)).  The Court does not find that better pleading will cure the defects in Baram's claims, particularly those that are time-barred.  Because amendment would be futile, leave to amend is denied.

### B.  The Court Will Not Impose Sanctions at This Time

After repeating their arguments for dismissal, Defendants[8] allege that "[i]t is clear on its face, especially when the complete lack of merit is considered, that Baram brought this action for the sole purpose of harassing the defendants, particularly Jane Doe," as part of his longstanding "retaliation campaign" to, in Baram's words, "destroy" Defendants as retribution for bringing the *Doe* Action.  Doc. 58 at 35; *see also* Doc. 71 at 12 (describing the instant action as a "vendetta lawsuit").  Moreover, his counsel, the Williams Parties, "enable[d]" the suit instead of "stepp[ing] in and refus[ing] to go along with this patently frivolous lawsuit."  Doc. 58 at 36.  Thus, because "no reasonable party or attorney acting in accordance with his ethical obligations [could], in good faith, believe that any of [Baram's] claims are actionable," Defendants ask the Court to impose Rule 11 sanctions on Baram and the Williams Parties.  *Id.* at 36–37.

The argument in opposition to sanctions states only:  "For reasons set forth in Baram's opposition to the [Attorney] Defendants' Motion to Dismiss, which are incorporated by this reference, Baram's claims and arguments are not frivolous or groundless, and therefore, sanctions under Rule 11 are not appropriate."  Doc. 67.

Although the Court is troubled by Baram's statements that he intends to "destroy" Defendants and the strength of his claims in the instant action, it does not intend to use its

---

[8] Although the motion is made by the Attorney Defendants, as with the motion to dismiss, Doe states that the arguments for sanctions "apply equally to and are equally available to" her and therefore "adopts as her own and incorporates by reference the arguments made, and authority cited, by the Attorney Defendants . . .  and joins in the request for relief sought."  Doc. 72 at 2.  The Court therefore refers to the motion as being made by "Defendants" collectively.

discretion to impose sanctions on either Baram or the Williams Parties at this time.  Even if the instant suit does not clearly violate Rule 11, it comes perilously close to crossing the line insofar as legitimate concerns exist that the complaint was "interposed for an[] improper purpose," *Robledo*, 965 F. Supp. 2d at 477–78, and that one could not conclude the claims brought here were "warranted by existing law" after conducting "an inquiry reasonable under the circumstances," Fed. R. Civ. P. 11(b)(1).  But, because Rule 11 sanctions "are an extreme remedy," which the Court should impose with caution, the Court must resolve all doubts in favor of Baram and the Williams Parties as to whether losing arguments crossed the line into sanctionable conduct.  *See Ramashwar*, 2006 WL 36752, at *3; *see also Chauvet*, 1996 WL 665610, at *17 (noting that courts have discretion to impose Rule 11 sanctions "even where the violation is clear").  Consequently, the Court will not use its discretion to sanction either Baram or the Williams Parties at this time.  The Court cautions, however, that if Baram and the Williams Parties continue to engage in similar litigation conduct, the Court *will* impose sanctions in the future.

## IV.    CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED, and the motion for sanctions is DENIED.  The Clerk of Court is respectfully directed to terminate the motions (Docs. 56, 59, 63) and close the case.

It is SO ORDERED.

Dated:    January 22, 2024
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.